IN THE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| Daniel Human, individually and<br>on  behalf of all others  similarly situated, | ) ) ) | |
| Plaintiffs. | ) ) | |
| Vs. | ) ) ) | No. |
| Rocket Mortgage Company, Inc.<br>Agent: Concord Assets Finance Corp.<br>1201 N Orange St., Ste. 718<br>New Castle, DE, 19801; and | ) ) ) ) ) | COMPLAINT CLASS ACTION<br><br>Jury Trial Demanded |
| Registered Agent:<br>CT Corporation<br>120 S. Central Ave.<br>Clayton, Mo. 63105; and | ) ) ) ) ) | |
| Rocket Mortgage Company, Inc.<br>1 Campus Martius<br>Detroit, MI 48226; and | ) ) ) ) | |
| Registered Agent:<br>CT Corporation<br>120 S. Central Ave.<br>Clayton, Mo. 63105; and | ) ) ) ) ) | |
| Rocket Mortgage Company, Inc.<br>40600 Ann Arbor Road E<br>Plymouth, MI 48170; and | ) ) ) ) | |
| Jay Farner, Chief Executive Officer<br>Rocket Mortgage Company, Inc.<br>1 Campus Martius<br>Detroit, MI 48226; and | ) ) ) ) ) | |
| Registered Agent:<br>CT Corporation<br>120 S. Central Ave.<br>Clayton, Mo. 63105; and | ) ) ) ) ) ) | |

Bob Walters, Chief Operating Officer  )
Rocket Mortgage Company, Inc.  )
40600 Ann Arbor Road E  )
Plymouth, MI 48170; and  )
  )
Registered Agent:  )
CT Corporation  )
120 S. Central Ave.  )
Clayton, Mo. 63105; and  )
  )
Dan Gilbert, Founder and Chairman  )
Rocket Mortgage Company, Inc.  )
1 Campus Martius  )
Detroit, MI 48226; and  )
  )
Michelle Nunes, Mortgage Banker  )
michellenunes@rocketmortgage.com; and  )
  )
Core Digital Media, LLC  )
12181 Bluff Creek Dr, Ste. 250  )
Los Angeles, CA 90094; and  )
  )
Yvette Ramos, Senior VP of Marketing  )
Core Digital Media, LLC  )
12181 Bluff Creek Dr, Ste. 250  )
Playa Vista, CA 90094; and  )
  )
Zach Sicliano, VP Affiliate Marketing  )
Core Digital Media, LLC  )
12181 Bluff Creek Dr, Ste. 250  )
Playa Vista, CA 90094,  )
  )
                  Defendants.  )

---

**COMPLAINT CLASS ACTION**

---

I.    <u>Preliminary Statement</u>

1.    Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing

2

practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6) and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2.      "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.;* 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person 's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive relief. *Id* ...This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.,* 925 F.3d 643, 649-50 (4th Cir. 2019).

3.     The Plaintiff Daniel Human, alleges that Rocket   Mortgage Company, Incorporated, Jay Farner, Bob Walters, Dan Gilbert, Michelle Nunez,  Core Digital Media, LLC, Yvette Ramos,  and Zach Siciliano, and  an  unknown telemarketer   (hereinafter collectively referred to as "Rocket," "Farner," "Walters," "Gilbert," "Nunez," "Core," "Ramos," "Siciliano" and "Defendants"), made unsolicited telemarketing calls to his residential telephone number that is listed on the National Do Not Call Registry.

4.     Because  telemarketing  calls  typically  use  technology  capable  of  generating thousands of similar calls  per day, the Plaintiff sues on behalf  of  a  proposed nationwide class of  other persons who  received  similar  calls.

5.     A class action is the best means  of obtaining redress for the Defendant's illegal telemarketing  and is consistent  both with the private  right of action afforded  by the TCPA and the fairness and efficiency  goals of Rule 23 of the Federal Rules of Civil Procedure.

II.     Parties

6.      Plaintiff Daniel Human (hereinafter referred to as "Plaintiff," "Dan," or "Mr. Human") is an individual residing in this District.

7.      Defendant Michelle Nunes, the telemarketer (hereinafter collectively referred to as "Michelle" "Agent," or "Defendant Nunes"), is an agent, vendor, and employee of Rocket Mortgage, or a contracted agent identifying herself as "MichelleNunes@rocketmortgage.com"

8.      Defendant Rocket Mortgage Company, Incorporated is a Delaware Corporation (hereinafter collectively referred to as "Rocket," or "Defendant Rocket"), with branch offices located in Detroit and Plymouth, Michigan, and is registered in Missouri as a foreign corporation, with its registered agent being located in St. Louis County, CT Corporation, 120 S. Central Ave,

Clayton, Mo. 63105,  is a company that makes telemarketing calls, or employs its agents to make telemarketing calls into this District, just as it did with the Plaintiff.

9. Defendant Jay Farner ("Farner"), is the Chief Operating Officer of the Rocket Mortgage Company, Incorporated, with his principal office located at 1 Campus Martius, Detroit, Michigan, 48226, and is directly and personally responsible for the promulgation and enforcement of corporate policies that encourage, entice, and condone telemarketing calls being made from this District and to this District on behalf of the Rocket Defendant to phone numbers registered on the federal do not call registry, just as it did with the Plaintiff.

10. Defendant Bob Walters ("Walters"), is the Chief Operating Officer of the Rocket Mortgage Company, Incorporated, with his principal office located at 40600 Ann Arbor Rd. E, Plymouth, MI 481701, and is directly and personally responsible for the promulgation and enforcement of corporate policies that encourage, entice, and condone telemarketing calls being made from this District and to this District on behalf of the Rocket Defendant to phone numbers registered on the federal do not call registry, just as it did with the Plaintiff.

11. Defendant Dan Gilbert ("Gilbert"), is the Founder and Director Chief of the Rocket Mortgage Company, Incorporated, with his principal office located at 1 Campus Martius, Detroit, Michigan, 48226, and is directly and personally responsible for the promulgation and enforcement of corporate policies that encourage, entice, and condone telemarketing calls being made from this District and to this District on behalf of the Rocket Defendant to phone numbers registered on the federal do not call registry, just as it did with the Plaintiff.

5

12.     Defendant Core Digital Media, LLC is a California company (hereinafter collectively referred to as "Core," or "Defendant Core"), that specializes in mortgage leads and marketing for Rocket Mortgage, with its principal offices located 12181 Bluff Creek Dr, Ste. 250, Los Angeles, CA 90094,  is a company that makes telemarketing calls, or employs its agents to make telemarketing calls into this District, or provides the telemarketing leads for said call to be made in to this district, just as it did with the Plaintiff.

13.     Defendant Yvette Ramos ("Ramos"), is the Senior VP of Marketing for core and supplies mortgage loan leads to the Rocket Defendants, with her principal office located at Core Digital Media, LLC, 12181 Bluff Creek Dr, Ste. 250,Playa Vista, CA 90094, and is directly and personally responsible for the promulgation and enforcement of corporate policies that encourage, entice, and condone telemarketing calls being made from this District and to this District on behalf of the Rocket Defendant to phone numbers registered on the federal do not call registry, just as it did with the Plaintiff.

14.     Defendant Zach Sicliano ("Sicliano"), is the VP of Affiliate Marketing for core and supplies mortgage loan leads to the Rocket Defendants, with his principal office located at Core Digital Media, LLC, 12181 Bluff Creek Dr, Ste. 250,Playa Vista, CA 90094, and is directly and personally responsible for the promulgation and enforcement of corporate policies that encourage, entice, and condone telemarketing calls being made from this District and to this District on behalf of the Rocket Defendant to phone numbers registered on the federal do not call registry, just as it did with the Plaintiff

Jurisdiction and Venue

15.     The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC,* 132 S. Ct. 740 (2012). This Court has supplemental jurisdiction over the pendant state claims, including the Missouri Merchandising Practices Act ("MMPA") claims under Section 407 et seq., RSMo., and the Missouri no-call registry in accord with 28 U.S.C. §1367.

16.     This Court has personal jurisdiction over the Defendants because they either reside in this District and/or made the calls into this District.

17.     Venue is proper in accord with 28 U.S.C 1391(b) because the calls at issue were made into this District and/or from this District.

<u>TCPA Background</u>

18.     In 1991 Congress enacted the TCPA to regulate explosive growth of the telemarketing industry. In so doing, Congress recognized that "[un]restricted telemarketing . . . can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. 102-243 § 2(5) (1991) (codified at  47 U.S.C. §227).

19.     The National Do Not Call Registry (the "Registry") allows consumers to  register their telephone numbers and  thereby indicate their desire not  to receive telephone solicitations at those numbers. *See* 47 C.P.R.§ 64.1200(c)(2).

20.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

21.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provide a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. 227(c) (5); 47 C.F.R. 64.1200 (c)(2).

III.     Factual Allegations

22.     Rocket sells and brokers mortgage loans, where it offers to loan home buyers money to purchase residential and commercial properties in exchange for interest on the loan amounts.

23.     To generate leads, Defendant's Rocket, Farner, Walters, Gilbert, Jordan, employs, then hides behind a labyrinth of telemarketing companies and their agents and vendors which operate under fictitious names, dissolved names, merged names, and a web of deceptive names and d/b/a's, to secrete, insulate, and conjure a deceptive marketing scheme which provides them with a nearly impenetrable web of shell companies to provide, on its face, what appears as plausible deniability for their illegal actions, which includes Defendant's Core, Ramos, Siciliano and its employees and/or agents and their click through lead generating websites, to gain consumer's information and personal cell phone numbers, and make unlawful random and robocall generated telemarketing calls to consumers on the federal do not call registry who have never had a relationship with, and who never consented to receive their calls in violation of both 47 U.S.C. 227(c) (5); 47 C.F.R. 64.1200 (c)(2), and the deceptive marketing prohibitions protected under the Missouri Merchandising Practices Act, Section 407.010 et seq. RSMo., as well as the Missouri no call list prohibiting calls and texts.

24.     Plaintiff is and was at all times mentioned herein, a "person" as defined by 47 U.S.C. §153(39).

25.     Plaintiffs telephone number (the "Number"), 314-915-XXXX, is on the National Do Not Call Registry, and has been continuously since June of 2022.

26.     Despite this, the Defendants placed more than ten telemarketing calls/texts to Mr. Human in December of 2022 from 216-466-8284 and 313-373-3000, telephone numbers registered to Rocket Mortgage Company in Detroit, Michigan.

27.     Plaintiff answered the first call on December 10, 2022, at 8:06 am and despite the fact that he was on the National Do Not Call Registry.

28.     The Defendants made more than nine additional telemarketing calls/texts to the Plaintiff during December of 2022. Each call was identified on Plaintiff's cell phone as "Rocket Mortgage".

29.     During these calls/texts the caller identifies herself as "Michelle Nunes of Rocket Mortgage" and solicited Mr. Human to buy a Rocket Mortgage home loan, in several cases asking to speak with "Thomas"?

30.  These phone calls were made in the following order:

A.      First call made on December 10, 2022 at 8:06 am

B.      Followed by a text on December 10, 2022 at 8:07 am

C.      Text on December 12, 2022 at 10:28 am

D.      Call on December 13, 2022 at 11:15 am

E.      Call on December 14, 2022 at 9:57 am

F.      Call on December 15, 2022 at 9:10 am

G.      Text on December 17, 2022 at 10:11

H.      Call on December 21, at 11:37 am

I.      Call on December 22, 2022.

J.      Three separate calls were made on December 23, 2022

k.      December 27, 2022 from Nathan at 2:01 pm.

All the calls/texts were made by Defendant Michelle Nunes who repeatedly identified herself as "Michelle Nunes from Rocket Mortgage."  The calls were made from the two numbers listed under item #27 in the Complaint.

31.      Despite that, and the fact that he was on the National Do Not Call Registry, the calls/texts were made repeatedly offering an opportunity for a home mortgage and, in some cases, Plaintiff was referred to as "Thomas."

32.      The Plaintiff did not respond to the text messages or calls as they were made during plaintiff's work schedule and/or during family time, including weekends.

33.      Despite that, and the fact that he was on the National Do Not Call Registry, these unsolicited calls and texts continued.

34.      During all of these calls, there was a significant pause and click before Defendants' representative started speaking, which is a telltale sign that Defendants used a predictive dialer to make the call:

> Predictive dialers initiate phone calls while telemarketers are talking to
> other consumers . . . In attempting to "predict" the average time it takes
> for a consumer to answer the phone and when a telemarketer will be free
> to take the next call, predictive dialers may either "hang-up" on consumers
> or keep the consumer on hold until connecting the call to a sales
> representative, resulting in what has been referred to as "dead air."

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 2003 Report and Order*, CG Docket No. 02-278, FCC 03-153, ¶ 146, 18 FCC Rcd. 14014, 14101, 2003 WL 21517853, *51 (July 3, 2003), *available at* http://hraunfoss.fcc.gov/edocs _public/attachmatch/FCC-03-153A1.pdf ("*2003 Report and Order*").

35.     The Defendant's placed the majority of calla alleged in this complaint with one or more predictive dialers. Predictive dialers constitute an automatic telephone dialing system; they are capable of storing, producing, and dialing any telephone number, and are capable of storing, producing, and dialing telephone numbers using a random or sequential number generator. Further, no human manually entered Plaintiff and Class members' cellular telephone number when Defendants made the calls alleged below. Rather, the predictive dialer(s) electronically dialed Plaintiff and Class members' cellular telephones in an automated fashion. The predictive dialers otherwise constitute an "automatic telephone dialing system" under the meaning of 47 U.S.C. § 227(a)(1).

36.     Plaintiffs' privacy has been violated by the above-described telemarketing calls, and he has suffered anxiety, stomach pains, a severe loss or sleep and has been harassed and humiliated by the calls.

37.     The Plaintiff never provided his written consent or requested these calls.

38.     Plaintiff and all members of the Class, defined below, have been harmed by the acts of Defendants and their deceptive marketing practices because their privacy has been violated, they were annoyed and ·harassed.

39.     In addition, the calls occupied their telephone lines, rendering them unavailable for legitimate communication interfering with both work and Plaintiff's personal time.

A.     **The Missouri Merchandising Practices Act**

40.     The Plaintiff realleges and incorporates the above paragraphs as if fully set forth herein.

41.     Section 407.020, RSMo provides in pertinent part:

The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section 407.453, in **or from** the state of Missouri, is declared to be an unlawful practice… Any act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or after the sale, advertisement, or solicitation.

42.     Section 407.025.1 provides in pertinent part:

Any person who purchases or leases merchandise primarily for any personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020 may bring a  private civil action in either the circuit court of the county in which the seller or lessor resides or in which the transaction complained of took place, to recover actual damages. The court may, in its discretion, award punitive damages and may award to the prevailing part attorney's fees, based on the amount of time reasonably expended, and may provide such equitable relief as it deems necessary or proper.

43.     Section  407.010(4)  defines  "merchandise"  as  any  objects,  wares,  goods, commodities intangibles, real estate, or services. This definition of merchandise includes mortgage

loans advertised and sold by Defendant's Rocket, Farner, Walters, Gilbert, Nunez, Core, Ramos, Siciliano and its employees, vendors, and/or agents.

44.     Pursuant to authority granted it in §407.145, the Attorney General has promulgated rules explaining and defining terms utilized in §407.020 of the Merchandising Practices Act. Said rules are contained in the Missouri Code of State (hereinafter "CSR"). The rules relevant to the Merchandising Practices Act allegations herein include, but are not limited to, the provisions of the CSR.

45.     15 CSR 60-8.010 provides the following definitions:

(1)(B) Consumer shall include any person (as defined in section 407.010.5RSMo) who purchases, may purchase, or is solicited for purchase of merchandise. (1)(E) Good faith shall mean honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade. 15 CSR 60-8.020 provides that:

An unfair practice is any practice which-

(A) Either-

1. Offends any public policy as it has been established by the Constitution,
statutes or common law of this state, or by the Federal Trade Commission,
or its interpretive decisions; or

2. Is unethical, oppressive, or unscrupulous; and

(B) Presents a risk of, or causes, substantial injury to consumers.

46.     15 CSR 60-8.040 provides that:

(1) It is an unfair practice for any person in connection with the advertisement
or sale of merchandise to violate the duty of good faith in solicitation, negotiation
and performance, or in any manner fail to act in good faith.

47.     15 CSR 60-8.090 provides that:

(1) It is an unfair practice for any person in connection with the advertisement

or sale of merchandise to engage in any method, use or practice which-
>    (A) **Violates state or federal law intended to protect the public**; and
>    (B) Presents a risk of, or causes substantial injury to consumers.

48.    15 CSR 60-9.010 provides that:

(1)(C) Material fact is any fact which a reasonable consumer would likely consider to be important in making a purchasing decision, or which would be likely to induce a person to manifest his/her assent, or which the seller knows would be likely to induce a particular consumer to manifest his/her assent, or which would belikely to induce a reasonable consumer to act, respond or change his/her behavior in any substantial manner.

49.    15 CSR 60-9.020 provides that:

(1) Deception is any method, act, use, practice, advertisement or solicitation that has the tendency or capacity to mislead, deceive or cheat, or that tends to create a false impression.

(2) Reliance, actual deception, knowledge of deception, intent to mislead or deceive, or any other culpable, mental state such as recklessness or negligence

(1)(B) Consumer shall include any person (as defined in section 407.010.5RSMo) who purchases, may purchase, or is solicited for purchase of merchandise. (1)(E) Good faith shall mean honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade. 15 CSR 60-8.020 provides that:

An unfair practice is any practice which-

(A) Either-

1. Offends any public policy as it has been established by the Constitution, statutes or common law of this state, or by the Federal Trade Commission, or its interpretive decisions; or

2. Is unethical, oppressive, or unscrupulous; and

(B) Presents a risk of, or causes, substantial injury to consumers.

50.    15 CSR 60-8.040 provides that:

(1) It is an unfair practice for any person in connection with the advertisement or sale of merchandise to violate the duty of good faith in solicitation, negotiation and performance, or in any manner fail to act in good faith.

51.    15 CSR 60-8.090 provides that:

(1) It is an unfair practice for any person in connection with the advertisement

or sale of merchandise to engage in any method, use or practice which-

> (A) Violates state or federal law intended to protect the public; and
> (B) Presents a risk of or causes substantial injury to consumers.

52.     15 CSR 60-9.010 provides that:

(1)(C) Material fact is any fact which a reasonable consumer would likely consider to be important in making a purchasing decision, or which would be likely to induce a person to manifest his/her assent, or which the seller knows would be likely to induce a particular consumer to manifest his/her assent, or which would belikely to induce a reasonable consumer to act, respond or change his/her behavior in any substantial manner.

53.     15 CSR 60-9.020 provides that:

(1) Deception is any method, act, use, practice, advertisement or solicitation that has the tendency or capacity to mislead, deceive or cheat, or that tends to create a false impression. (2) Reliance, actual deception, knowledge of deception, intent to mislead or deceive, or any other culpable, mental state such as recklessness or negligence

(1)(E) Good faith shall mean honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade.

54.      15 CSR 60-8.020 provides that:

An unfair practice is any practice which-

(A) Either-

1. Offends any public policy as it has been established by the Constitution, statutes or common law of this state, or by the Federal Trade Commission, or its interpretive decisions; or

2. Is unethical, oppressive, or unscrupulous; and

(B) Presents a risk of, or causes, substantial injury to consumers.

55.     15 CSR 60-8.040 provides that:

(1) It is an unfair practice for any person in connection with the advertisement or sale of merchandise to violate the duty of good faith in solicitation, negotiation and performance, or in any manner fail to act in good faith.

56.     15 CSR 60-8.090 provides that:

(1) It is an unfair practice for any person in connection with the advertisement or sale of merchandise to engage in any method, use or practice which-
> (A) Violates state or federal law intended to protect the public; and
> (B) Presents a risk of, or causes substantial injury to consumers.

57.     15 CSR 60-9.020 provides that:

(1) Deception is any method, act, use, practice, advertisement, or solicitation that has the tendency or capacity to mislead, deceive or cheat, or that tends to create a false impression. (2) Reliance, actual deception, knowledge of deception, intent to mislead or deceive, or any other culpable, mental state such as recklessness or negligence are not elements of deception as used in section 407.020.1, RSMo… *Deception may occur in securing the first contact with a consumer and is not cured even though the true facts or nature of the advertisement of offer for sale are subsequently disclosed.* (Our *emphasis*)

58.     15CSR 60-9.030 provides that:

(1) It is deception for any person in any advertisement or sales presentation to use any format which because of its overall appearance had the tendency or capacity to mislead consumers.

59.     15 CSR 60-9.060 provides that:

(1) False promise is any statement or representation which is false or misleading as the maker's intention or ability to perform a promise, or likelihood the promise will be performed.
(2) Reliance and injury are not elements of false promise as used in section 407.20.1, RSMo.

60.     15 CSR 60-9.070 provides that:

(1) A misrepresentation is an assertion that is not in accord with the facts.
(2) Reliance, knowledge that the assertion is false or misleading, intent to defraud, intent that the consumer rely upon the assertion, or any other culpable [capable in origin] mental state such a recklessness or negligence, are not elements of misrepresentation as used in section 407.020.1.

61.     15 CSR 60-9.080 provides that:

(1) It is a misrepresentation for any person in connection with the advertisement or sale of merchandise to omit to state a material fact necessary in order to make statements made in light of the circumstances under which they are made, not misleading.

62.     15 CSR 60-9.110 provides that:

(1) Concealment of a material fact is any method, act, use or practice which operates to hide or keep material facts from consumers.

(2) Suppression of a material fact is any method, act, use of practice which is likely to curtail or reduce the ability of consumers to take notice of material facts which are stated.

(3) Omission of a material fact is any failure by a person to disclose material facts know to him/her, or upon reasonable inquiry would be known to him/her.

(4) Reliance and intent that others rely upon such concealment, suppression or omission are not elements of concealment, suppression or omission as used in section 407.020.1.

63.     Pursuant to § 407.020 RSMo (Missouri Merchandising Practices Act), it is an unlawful practice to use deception, fraud, false pretense, false promise, misrepresentation, or unfair practice, or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise in trade or commerce.

64.     Defendant's Rocket, Farner, Walters, Gilbert, Nunez, Core, Ramos, Siciliano and its employees and/or agents, by and through its employees and agents, used deception, fraud, false pretense, false promise, misrepresentation, or unfair practice, or concealed, suppressed, or omitted a material facts in connection with the unwanted solicitations made to his number listed on the do not call registry and car sales by engaging in the following:

a.      Defendant's Rocket, Farner, Walters, Gilbert, Nunez, Core, Ramos, Siciliano and its employees and/or agents and other unknown telemarketers acting on their behalf, by and through the aid and assistance of the mortgagebroker.com and labyrinth of websites, dissolved companies, and telemarketers, as created and marketed by these Defendants through the aid, assistance and use of predictive dialers, robo-calls and ATDS dialing systems owned and operated by the collective Defendant's to facilitate unsolicited calls to the DNC and ATDS classes, with the specific intent to deceive persons on the no call list to believe that they would not receive telemarketing calls and were merely checking governmental FHA mortgage rates.

17

b.      By falsely and deceptively misidentifying both the click through lead paradigm, telemarketers identity and their company origin to deliberately misrepresent that they were actually employees of the government, instead of telemarketers acting as an agent and/or vendor on Defendant's Rocket, Farner, Walters, Gilbert, Nunez, Core, Ramos, Siciliano and its employees and/or agents and other unknown telemarketers acting on their behalf in an effort to mislead the Plaintiff into the disclosure of his personal and private information, when he might not otherwise have considered such disclosure to a third party and/or vendor.

c.      By deceptively using company names and d/b/a's and deliberately concealing company identities throughout the myriad calls, that have been legally dissolved, to dissuade consumers and persons on the federal no call list from pursuing lawful claims under the TCPA,  MMPA and Missouri no call registry for knowingly deceptive marketing practices, Then rendering the inquiry inoperable unless the Plaintiff provided his phone number.

d.      By then having a meeting of the minds and agreeing to illegally provide Plaintiffs phone number, thereafter, providing it to countless other telemarketers so they could illegally call Plaintiff's phone, clearly registered on the no call lists, although Plaintiff did not have a relationship with those Defendants and did not provide those Defendants with written permission to call him

e.      By badgering of the Plaintiff with myriad unwanted telemarketer solicitations by phone and text for mortgage loans, when all he sought, and believed he would receive, was an anonymous right to privacy while checking the federal interest rates.

18

f.      For Defendant's Rocket, Farner, Walters, and Nunez to hire the other marketing

Defendants, i.e. Core, Ramos, Siciliano, who they knew or reasonably should have

know were providing restricted numbers and making calls to the 244.3 million

people listed on the federal do not call registry in an effort to conceal the identity of

the telemarketers, and provide the Defendants with a false and misleading façade of

plausible deniability, when they are 100% culpable and funded the illegal calls and

texts to the Plaintiff and others similarly situated on the federal no call registry.

g.      By "spoofing" area codes to show as a local area code to increase the

likelihood that the Plaintiff would believe that it was a local call for legitimate

purposes, instead of an unsolicited marketing or solicitation call from Defendant's

Rocket, Farner, Walters, Gilbert, Nunez, Core, Ramos, Siciliano and its employees and/or

agents, vendors and other unknown telemarketers acting on their behalfby and through

the aid and assistance of the robo-call and ATDS dialing systems.[1]

h.      As a direct result of the deception, false pretense, misrepresentation, unfair and

fraudulent practices, concealment, and omission of these material facts of Defendant's

Rocket, Farner, Walters, Gilbert, Nunez, Core, Ramos, Siciliano and its employees and/or

agents and other unknown telemarketers acting on their behalf, by and through the aid

and assistance of the robo-call and ATDS dialing systems, the Plaintiff has suffered

continuing harassment, humiliation, loss of sleep, depression, mental fatigue, a reprimand

---

[1] Telemarketers cause a local number to appear on the recipients' caller ID in order to
deceptively increase the likelihood that the recipient will pick up the call. For example, Velocify,
offers automated outbound dialer software that gives users the ability to "[o]perate like a local
business and boost contact rates by calling prospects from their own area code." *See*
http://pages.velocify.com/rs/522-DJL-243/images/velocify-pulsecommunication.

from his employer and loss of thousands of dollars in bonus opportunities, injuries to his privacy rights, intrusion upon seclusion, his mental health and wellbeing, inability to use his phone and other damages, cause frustration and annoyance, thereby warranting treble and punitive damages.[2]

i.      By continuing to repeatedly call and text the Plaintiff after being informed that he was on the Missouri and Federal No Call registries, and deliberately violating his protections under both those state and federal Acts and statutes.[3]

---

[2] These injuries violated the Plaintiff's substantive rights. In *Romero v. Department Stores National Bank*, the harms the plaintiff alleged, such as headaches, sleeping issues, and weight loss, were "divorced from the alleged violation of the TCPA." 199 F.Supp.3d 1256, 1265 (S.D. Cal. 2016). By contrast, *Greenley's* amended complaint alleges that the unsolicited communications caused him frustration and annoyance and resulted in lost time and the temporary loss of utility of his cellular telephone. The circumstances in *Romero* are inapposite here. In summary, *Greenley* allegedly received multiple unsolicited automated communications from LIUNA. *Greenley* has alleged conduct that violated his substantive right, established by the TCPA, to be free from the invasion of privacy and intrusion upon seclusion caused by unsolicited automated communications. This injury is neither hypothetical nor uncertain, and it demonstrates a harm or, at a minimum, a material risk of harm that is not merely a procedural violation. For these reasons, the Court found that *Greenley* has Article III standing and denies LIUNA's motion to dismiss on this ground.

[3] Even though *Ginwright* initially consented to autodialed calls to his cell phone about his car loan, *Ginwright* asserts that he later revoked that consent. The FCC has ruled that under the TCPA, "a called party may revoke consent" to autodialed phone calls "at any time and through any reasonable means." In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991 ("2015 FCC Ruling"), 30 FCC Rcd. 7961, 7993 (2015). This right to revoke is premised on the common law understanding of the meaning of "consent," which is voluntarily given and can be voluntarily taken away. *See Osorio v. State Farm Bank, FSB*, 746 F.3d 1242, 1255–56 (11th Cir. 2014) (finding that express consent may be revoked and that there was a genuine issue of material fact on whether the plaintiff revoked consent); *Gager v. Dell Fin. Serv.*, 727 F.3d 265, 270–71 (3d Cir. 2013) (holding that the TCPA allows consumers to revoke prior express consent); 2015 FCC Ruling at 7994. Moreover, as a remedial statute, the TCPA should be construed to benefit consumers. *Gager*, 727 F.3d at 271. A consumer may revoke consent by "any reasonable method including orally or in writing." 2015 FCC Ruling at 7996. Courts have applied this right in the context of consent given through a credit application, *Gager*, 727 F.3d at 267, and through an application for insurance, *Osorio*, 746 F.3d at 1247. Ginwright was therefore permitted to revoke his consent to Exeter's phone calls even though he had earlier

<u>Class Action Allegations</u>

65.      As authorized by Rule 23(b)(2) or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

66.      Class Definition: Plaintiff seeks to certify a class and brings this Complaint against the Defendants, pursuant to Federal Rule of Civil Procedure 23, on behalf of herself and the following Classes:

**Robocall Class and Automatic Telephone Dialing System Class:**

All persons in the United States who received any unsolicited telephone calls from Defendants or their agents on their cellular phone service through the use of any automatic telephone dialing system or artificial or pre-recorded voice system, which telephone calls by Defendants or their agents were not made for emergency purposes or with the recipients' prior express consent, within four

---

granted it by providing his cell phone number in the Credit Application. Exeter, however, argues that Ginwright had also consented to autodialed calls through a consent clause in the Credit Application, and that such consent was bargained-for consideration as part of a contract between Ginwright and Exeter and thus cannot be revoked. As support, Exeter cites *Reyes v. Lincoln Automotive Financial Services*, 861 F.3d 51 (2d Cir. 2017), in which the United States Court of Appeals for the Second Circuit held that the TCPA did not allow for revocation of consent when that consent "was included as an express provision of a contract." *Id.* at 57. Such a prohibition on later revocation of consent arising from a boilerplate consent provision, however, would be inconsistent with the FCC's ruling that a consumer has "a right to revoke consent," 🚩2015 FCC Ruling at 7996, including when originally provided in a credit application, 🚩*id.* at 7993 n.216, and with the remedial purposes of the TCPA, *see Gager*, 727 F.3d at 271. The Court therefore declines to adopt the prohibition on revocation in *Reyes*, which would result in the effective circumvention of the TCPA in the debtor-creditor context. Indeed, Exeter itself has acknowledged that "[c]onsent under the TCPA is not a matter of contract, nor subject to contract principles." Opp'n Mot. Class Certification at 15, ECF No. 65.

years prior to the filing of this Complaint.

**Do Not Call Class ("DNC Class")**:
All persons in the United States (1) who had his or her telephone
number(s) registered with the national Do-Not-Call registry for at
least thirty days; (2) who received more than one telephone call
made by or on behalf of Defendants that promoted solar energy
products or services products or services; (3) within a 12-month
period; and (4) for whom Defendants had no current record of
consent to place such calls to him or her.
This is referred to as the "Class".

67.     Excluded from the Class are counsel, the Defendant, and any entities in which

the Defendant have a controlling interest, the Defendant's agents and employees, any judge to

whom this action is assigned, and any member of such judge's staff and immediate family.

68.     The Class as defined above are identifiable through phone records and phone

number databases.

69.     The potential members of the Class number at least in the thousands.

70.     Individual joinder of these persons is impracticable.

71.     Plaintiff is a member of the Class.

72.     There are questions of law and fact common to Plaintiff and the proposed

Class, including, but not limited to the following:

a)     whether the Defendants systematically made multiple telephone calls to members

of the National and Missouri Do Not Call Registry Class;

(b)     whether Defendants made calls to Plaintiff and members of the Class without first

obtaining prior express written consent to make the calls;

(c)     whether the Defendants made the above-call using a predicitive dialer, robo-calls,

and ATDS.

(d)      whether Defendants conduct constitutes a violation of the TCPA;

(e)      whether the Defendants misrepresentations, omissions, and other deceptive marketing practices constitutes a violation of the MMPA.

(f)      whether members of the Class are entitled to treble damages based on the willfulness of Defendants conduct.

73.      The Plaintiffs claims are typical of the claims of members of the Class.

74.      Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class, he will fairly and adequately protect the interests of the Class, and he is a 20-year litigation paralegal and the Director of Operations for a St. Louis company, who has access hired a skilled attorney experienced in class actions, including TCPA class actions.

75.      Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.  The only individual question concerns the identification of class members, which will be ascertainable from records maintained by Defendant and/or their agents, vendors, and sub-contractors.

76.      The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

Count I

Telephone Consumer Protection Act (Violations of 47 U.S.C. § 227)
(On behalf of Plaintiff and the National Do Not Call Registry)

77.      The Plaintiff repeats the prior allegations of this Complaint and incorporates them herein by reference.

78.     The foregoing acts and omissions of Defendants Rocket, Farner, Walters, Gilbert, Nunes, Core, Ramos, and Siciliano, and/or its affiliates, agents, and/or other persons or entities acting on Defendants behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to the Plaintiff and the Class despite their numbers being on the National Do Not Call Registry.

79.     The Defendants violations were negligent, willful, or knowing.

80.     As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $1,500 in damages for every call made, and treble damages of $25,000.00 per call and text.

81.     Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendants behalf from making telemarketing calls to numbers on the National Do Not Call Registry, except for emergency purposes, in the future.

<u>Prayer for Relief</u>

**WHEREFORE**, Plaintiff individually and on behalf of the Class, prays for the following relief against Defendant's Rocket, Farner, Walters, Gilbert, Nunes, Core, Ramos, and Siciliano, and/or its affiliates, agents, and/or other persons or entities acting on Defendants behalf:

a.     Certification of the proposed Class;

b.     Appointment of the Plaintiff as a representative of the Class.

c.     Appointment of Class Counsel, if the Court deems necessary.

d.      A declaration that the Defendants and/or their affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

e.      Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendants behalf from making calls, except for emergency purposes, to any residential number listed on the National Do Not Call Registry in the future.

f.      An award to Plaintiff and the Class of damages, as allowed by law; including treble damages; and

g.      Orders granting such other and further relief as the Court deems just, proper, and equitable in the circumstances.

Count II
Violation of the TCPA Against All Defendants
by Plaintiff Individually and on Behalf of the Robocall and ATDS Classes

82.      The Plaintiff repeats the prior allegations of this Complaint and incorporates them herein by reference.

83.      116.   47 U.S.C. §227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

84.      The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

25

85.     47 C.F.R. § 64.1200 (e), provides that § 64.1200 (c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

Report and Order at ¶ 167.

86.     The foregoing acts and omissions of Defendant's Rocket, Farner, Walters, Gilbert, Nunes, Core, Ramos, Siciliano, and/or its affiliates, agents, and/or other persons or entities acting on Defendants behalf, by and through the aid and assistance of the robo-call and ATDS dialing systems constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227 and Missouri no Call list, Section 407 et seq., RSMo, by making telemarketing calls, except for emergency purposes, to the Plaintiff and the Class despite their numbers being on the National Do Not Call Registry.

87.     Defendant's Rocket, Farner, Walters, Gilbert, Nunes, Core, Ramos, Siciliano, and/or its affiliates, agents, and/or other persons or entities acting on Defendants behalf and its employees and/or agents, vendors and other unknown telemarketers violations were deliberate, negligent, willful, or knowing.

88.     As a result of Defendant's Rocket, Farner, Walters, Gilbert, Nunes, Core, Ramos, Siciliano, and/or its affiliates, agents, and/or other persons or entities acting on Defendants

behalf, by and through the aid and assistance of the robo-call and ATDS dialing systems violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of $1,500 in damages for every call made, and treble damages of $15,000.00 per call.

89.     Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendants behalf from making telemarketing calls to numbers on the National Do Not Call Registry, except for emergency purposes, in the future.

Prayer for Relief

**WHEREFORE**, Plaintiff individually and on behalf of the Class, prays for the following relief against Defendant's Rocket, Farner, Walters, Gilbert, Nunes, Core, Ramos, Siciliano, and/or its affiliates, agents, and/or other persons or entities acting on Defendants behalf and its employees and/or agents their agents, vendors and other unknown telemarketers on their behalf:

a.     Certification of the proposed Class;

b.     Appointment of the Plaintiff as a representative of the Class.

c.     Appointment of Class Counsel, if the Court deems necessary.

d.     A declaration that the Defendants and/or their affiliates, agents, and/or other related entities' actions complained of herein violated the TCPA;

e.     Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendants behalf from making calls, except for emergency purposes, to any residential number listed on the National Do Not Call Registry in the future.

  f.  An award to Plaintiff and the Class of damages, as allowed by law; including treble damages for the Defendants flagrant and repeated violation of Federal Law; and

  g.  Orders granting such other and further relief as the Court deems just, proper, and equitable in the circumstances.

## Count III
## VIOLATION OF THE MISSOURI MERCHANDISING
## PRACTICES ACT

COMES NOW, Plaintiff and for his third cause of action against Defendant's Rocket, Farner, Walters, Gilbert, Nunes, Core, Ramos, Siciliano, and/or its affiliates, agents, and/or other persons or entities acting on Defendants behalf and its employees and/or agents their agents, vendors and other unknown telemarketers on their behalf, states:

90.  Plaintiff realleges and incorporates the above paragraphs as if fully set forth herein.

91.  Section 407.020, RSMo provides in pertinent part:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section 407.453, in **or from** the state of Missouri, is declared to be an unlawful practice… Any act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or after the sale, advertisement, or solicitation.

92.  Section 407.025.1 provides in pertinent part:

> Any person who purchases or leases merchandise primarily for any personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020 may bring a private civil action in either the circuit court of the county in which the seller or lessor resides or in which the transaction complained of took place, to recover actual damages. The court may, in its discretion, award punitive damages and may award to the prevailing part attorney's fees, based on the amount of time reasonably expended, and may provide such equitable relief as it deems necessary or proper.

93.     Section 407.010(4) defines "merchandise" as any objects, wares, goods, commodities intangibles, real estate or services. This definition of merchandise includes the mortgage loans and  services marketed, offered, advertised and sold by Defendant's Rocket, Farner, Walters, Gilbert, Nunes, Core, Ramos, Siciliano, and/or its affiliates, agents, and/or other persons or entities acting on Defendants behalf and its employees and/or agents their agents, vendors and other unknown telemarketers on their behalf, and its employees and/or their collective agents.

94.     Pursuant to authority granted it in §407.145, the Attorney General promulgated rules explaining and defining terms utilized in §407.020 of the Merchandising Practices Act. Said rules are contained in the Missouri Code of State (hereinafter "CSR"). The rules relevant to the Merchandising Practices Act allegations herein include, but are not limited to, the provisions of the CSR.

95.     15 CSR 60-8.010 provides the following definitions:

(1)(B) Consumer shall include any person (as defined in section 407.010.5RSMo) who purchases, may purchase or is solicited for purchase of merchandise.

(1)(E) Good faith shall mean honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade. 15 CSR 60-8.020 provides that:

An unfair practice is any practice which-(A) Either-

1. Offends any public policy as it has been established by the Constitution, statutes or common law of this state, or by the Federal Trade Commission, or its interpretive decisions; or

2. Is unethical, oppressive or unscrupulous; and

(B) Presents a risk of, or causes, substantial injury to consumers.

96.     15 CSR 60-8.040 provides that:

(1) It is an unfair practice for any person in connection with the advertisement

29

or sale of merchandise to violate the duty of good faith in solicitation, negotiation and performance, or in any manner fail to act in good faith.

97.     15 CSR 60-8.090 provides that:

(1) It is an unfair practice for any person in connection with the advertisement or sale of merchandise to engage in any method, use or practice which-
(A) Violates state or federal law intended to protect the public; and
(B) Presents a risk of, or causes substantial injury to consumers.

98.     15 CSR 60-9.010 provides that:
(1)(C) Material fact is any fact which a reasonable consumer would likely consider to be important in making a purchasing decision, or which would belikely to induce a person to manifest his/her assent, or which the seller  knows would be likely to induce a particular consumer to manifest his/her assent, or which would belikely to induce a reasonable consumer to act, respond or change his/her behavior in any substantial manner.

99.     15 CSR 60-9.020 provides that:

(1) Deception is any method, act, use, practice, advertisement or solicitation that has the tendency or capacity to mislead, deceive or cheat, or that tends to create a false impression.
(2) Reliance, actual deception, knowledge of deception, intent to mislead or deceive, or any other culpable, mental state such as recklessness or negligence, are not elements of deception as used in section 407.020.1, RSMo… Deception may occur in securing the first contact with a consumer and is not cured even though the true facts or nature of the advertisement of offer for sale are subsequently disclosed.

100.    15CSR 60-9.030 provides that:

(1) It is deception for any person in any advertisement or sales presentation to use any format which because of its overall appearance had the tendency or capacity to mislead consumers.

101.    15 CSR 60-9.060 provides that:

(1) False promise is any statement or representation which is false or misleading as the maker's intention or ability to perform a promise, or likelihood the promise will be performed.
(2) Reliance and injury are not elements of false promise as used in section407.20.1, RSMo.

102.    15 CSR 60-9.070 provides that:

(1) A misrepresentation is an assertion that is not in accord with the facts.
(2) Reliance, knowledge that the assertion is false or misleading, intent to defraud, intent that the consumer relies upon the assertion, or any other culpable [capable in origin] mental state such a recklessness or negligence, are not elements of misrepresentation as used in section 407.020.1.

103.   15 CSR 60-9.080 provides that:

(1) It is a misrepresentation for any person in connection with the advertisement or sale of merchandise to omit to state a material fact necessary in order to make statements made in light of the circumstances under which they are made, not misleading.

104.   15 CSR 60-9.110 provides that:

(1) Concealment of a material fact is any method, act, use or practice which operates to hide or keep material facts from consumers.
(2) Suppression of a material fact is any method, act, use of practice which is likely to curtail or reduce the ability of consumers to take notice of material facts which are stated.

(3) Omission of a material fact is any failure by a person to disclose material facts know to him/her, or upon reasonable inquiry would be known to him/her.

(4) Reliance and intent that others rely upon such concealment, suppression or omission are not elements of concealment, suppression or omission as used in section 407.020.1.

105.   Pursuant to § 407.020 RSMo (Merchandising Practices Act), it is an unlawful practice to use deception, fraud, false pretense, false promise, misrepresentation, or unfair practice, or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise in trade or commerce.

106.   Defendant's Rocket, Farner, Walters, Gilbert, Nunes, Core, Ramos, Siciliano, and/or its affiliates, agents, and/or other persons or entities acting on Defendants behalf and its employees and/or agents their agents, vendors and other unknown telemarketers on their behalf, used deception, fraud, false pretense, false promise, misrepresentation, or unfair practice, or

concealed, suppressed, or omitted a material facts in connection with the unwanted solicitations made to his number listed on the do not call registry and car sales by engaging in the following:

      a.    Defendant's Rocket, Farner, Walters, Gilbert, Nunes, Core, Ramos, Siciliano and its employees and/or agents and other unknown telemarketers acting on their behalf, by and through the aid and assistance of the mortgagebroker.com and labyrinth of websites, dissolved companies, and telemarketers, as created and marketed by these Defendants through the aid, assistance and use of predictive dialers, robo-calls and ATDS dialing systems owned and operated by the collective Defendant's to facilitate unsolicited calls to the DNC and ATDS classes, with the specific intent to deceive persons on the no call list to believe that they would not receive telemarketing calls and were merely checking governmental FHA mortgage rates.

b.    By falsely and deceptively misidentifying both the click through lead paradigm, telemarketers identity and their company origin to deliberately misrepresent that they were actually employees of the government, instead of telemarketers acting as an agent and/or vendor on Defendant's Rocket, Farner, Walters, Gilbert, Nunes, Core, Ramos, Siciliano and its employees and/or agents and other unknown telemarketers acting on their behalf in an effort to mislead the Plaintiff into the disclosure of his personal and private information, when he might not otherwise have considered such disclosure to a third party and/or vendor.

c.    By deceptively using company names and d/b/a's and deliberately concealing company identities throughout the myriad calls, that have been legally dissolved, to dissuade consumers and persons on the federal no call list from pursuing lawful claims under the TCPA,  MMPA and Missouri no call registry for knowingly

deceptive marketing practices, Then rendering the inquiry inoperable unless the Plaintiff provided his phone number.

d.     By then having a meeting of the minds and agreeing to illegally provide Plaintiffs phone number, thereafter, providing it to countless other telemarketers so they could illegally call Plaintiff's phone, clearly registered on the no call lists, although Plaintiff did not have a relationship with those Defendants and did not provide those Defendants with written permission to call him

e.     By badgering of the Plaintiff with myriad unwanted telemarketer solicitations by phone and text for mortgage loans, when all he sought, and believed he would receive, was an anonymous right to privacy while checking the federal interest rates.

f.     For Defendant's Rocket, Farner, Walters, and Nunes to hire the other marketing Defendants, i.e. Core, Ramos, Siciliano, who they knew or reasonably should have know were providing restricted numbers and making calls to the 244.3 million people listed on the federal do not call registry in an effort to conceal the identity of the telemarketers, and provide the Defendants with a false and misleading façade of plausible deniability, when they are 100% culpable and funded the illegal calls and texts to the Plaintiff and others similarly situated on the federal no call registry.

g.     By "spoofing" area codes to show as a local area code to increase the likelihood that the Plaintiff would believe that it was a local call for legitimate purposes, instead of an unsolicited marketing or solicitation call from Defendant's Rocket, Farner, Walters, Gilbert, Nunes, Core, Ramos, Siciliano and its employees and/or

33

agents, vendors and other unknown telemarketers acting on their behalf, by and through

the aid and assistance of the robo-call and ATDS dialing systems.[4]

h.      As a direct result of the deception, false pretense, misrepresentation, unfair and

fraudulent practices, concealment, and omission of these material facts of Defendant's

Rocket, Farner, Walters, Gilbert, Nunes, Core, Ramos, Siciliano and its employees and/or

agents and other unknown telemarketers acting on their behalf, by and through the aid

and assistance of the robo-call and ATDS dialing systems, the Plaintiff has suffered

continuing harassment, humiliation, loss of sleep, depression, mental fatigue, a reprimand

from his employer and loss of thousands of dollars in bonus opportunities, injuries to his

privacy rights, intrusion upon seclusion, his mental health and wellbeing, inability to use

his phone and other damages, cause frustration and annoyance, thereby warranting treble

and punitive damages.[5]

---

[4] Telemarketers cause a local number to appear on the recipients' caller ID in order to
deceptively increase the likelihood that the recipient will pick up the call. For example, Velocify,
offers automated outbound dialer software that gives users the ability to "[o]perate like a local
business and boost contact rates by calling prospects from their own area code." *See*
http://pages.velocify.com/rs/522-DJL-243/images/velocify-pulsecommunication.

[5] These injuries violated the Plaintiff's substantive rights. In *Romero v. Department Stores
National Bank*, the harms the plaintiff alleged, such as headaches, sleeping issues, and weight
loss, were "divorced from the alleged violation of the TCPA." 199 F.Supp.3d 1256, 1265 (S.D.
Cal. 2016). By contrast, *Greenley's* amended complaint alleges that the unsolicited
communications caused him frustration and annoyance and resulted in lost time and the
temporary loss of utility of his cellular telephone. The circumstances in *Romero* are inapposite
here. In summary, *Greenley* allegedly received multiple unsolicited automated communications
from LIUNA. *Greenley* has alleged conduct that violated his substantive right, established by the
TCPA, to be free from the invasion of privacy and intrusion upon seclusion caused by
unsolicited automated communications. This injury is neither hypothetical nor uncertain, and it
demonstrates a harm or, at a minimum, a material risk of harm that is not merely a procedural
violation. For these reasons, the Court found that *Greenley* has Article III standing and denies
LIUNA's motion to dismiss on this ground.

i.      By continuing to repeatedly call and text the Plaintiff after being informed that

he was on the Missouri and Federal No Call registries, and deliberately violating his

protections under both those state and federal Acts and statutes.[6]

107.    Plaintiff registered his number on the no call list to protect his privacy, solace,

and seclusion, and for that of his family and Defendant's Rocket, Farner, Walters, Gilbert, Nunes,

---

[6] Even though *Ginwright* initially consented to autodialed calls to his cell phone about his car loan, *Ginwright* asserts that he later revoked that consent. The FCC has ruled that under the TCPA, "a called party may revoke consent" to autodialed phone calls "at any time and through any reasonable means." In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991 ("2015 FCC Ruling"), 30 FCC Rcd. 7961, 7993 (2015). This right to revoke is premised on the common law understanding of the meaning of "consent," which is voluntarily given and can be voluntarily taken away. *See Osorio v. State Farm Bank, FSB*, 746 F.3d 1242, 1255–56 (11th Cir. 2014) (finding that express consent may be revoked and that there was a genuine issue of material fact on whether the plaintiff revoked consent); *Gager v. Dell Fin. Serv.*, 727 F.3d 265, 270–71 (3d Cir. 2013) (holding that the TCPA allows consumers to revoke prior express consent); 2015 FCC Ruling at 7994. Moreover, as a remedial statute, the TCPA should be construed to benefit consumers. *Gager*, 727 F.3d at 271. A consumer may revoke consent by "any reasonable method including orally or in writing." 2015 FCC Ruling at 7996. Courts have applied this right in the context of consent given through a credit application, *Gager*, 727 F.3d at 267, and through an application for insurance, *Osorio*, 746 F.3d at 1247. Ginwright was therefore permitted to revoke his consent to Exeter's phone calls even though he had earlier granted it by providing his cell phone number in the Credit Application. Exeter, however, argues that Ginwright had also consented to autodialed calls through a consent clause in the Credit Application, and that such consent was bargained-for consideration as part of a contract between Ginwright and Exeter and thus cannot be revoked. As support, Exeter cites *Reyes v. Lincoln Automotive Financial Services*, 861 F.3d 51 (2d Cir. 2017), in which the United States Court of Appeals for the Second Circuit held that the TCPA did not allow for revocation of consent when that consent "was included as an express provision of a contract." *Id.* at 57. Such a prohibition on later revocation of consent arising from a boilerplate consent provision, however, would be inconsistent with the FCC's ruling that a consumer has "a right to revoke consent," 2015 FCC Ruling at 7996, including when originally provided in a credit application, *id.* at 7993 n.216, and with the remedial purposes of the TCPA, *see Gager*, 727 F.3d at 271. The Court therefore declines to adopt the prohibition on revocation in *Reyes*, which would result in the effective circumvention of the TCPA in the debtor-creditor context. Indeed, Exeter itself has acknowledged that "[c]onsent under the TCPA is not a matter of contract, nor subject to contract principles." Opp'n Mot. Class Certification at 15, ECF No. 65.

Core, Ramos, Siciliano and its employees and/or agents their agents, vendors and other unknown telemarketers on their behalf, have deliberately and deceptively invaded the province of and violated his right to privacy deliberately causing him to be harassed and annoyed, as well as other physical injuries stated herein.

108.   Defendant's Rocket, Farner, Walters, Gilbert, Nunes, Core, Ramos, Siciliano and its employees and/or agents their agents, vendors and other unknown telemarketers on their behalf, actions constitute a pattern and practice of deceptive and unfair conduct.  Defendant's tactics were designed to exploit consumer fears, violate federal and state law, and to deceptively uncover consumers private information so the Defendants could conduct unwanted and unwarranted solicitation calls and induce consumers to provide substantial payments for Defendant's services.

109.   Section 407.025 RSMO gives the Plaintiff the right to recover actual damages, Punitive damages, and reasonable attorney's fees and costs.

110.   Defendant's Rocket, Farner, Walters, Gilbert, Nunes, Core, Ramos, Siciliano and its employees and/or agents their agents, vendors and other unknown telemarketers on their behalf's use of fraud, deception, false pretense, false promise, misrepresentation, or unfair practice, and/or of Defendant's concealment, suppression, or omission of a material fact in connection with its sale of the services, Plaintiff has suffered an ascertainable loss of money or property, and privacy in an amount greater than $75,000.00.

WHEREFORE, Plaintiff prays this Court enter judgment against Defendant's Rocket, Farner, Walters, Gilbert, Nunes, Core, Ramos, Siciliano and its employees and/or agents their agents, vendors and other unknown telemarketers on their behalf, awarding him actual damages that is fair and reasonable, plus punitive damages in an amount that will fairly and reasonably

36

punish Defendants for their deliberate misconduct and be expected to deter others, reasonable attorney's fees and costs, and such further relief this Court deems just and proper.

## COUNT V
### Defendants' Direct or Vicarious Liability

COMES NOW, Plaintiff and for his fourth cause of action against Defendant's Rocket, Farner, Walters, Gilbert, Nunes, Core, Ramos, Siciliano and its employees and/or their agents, vendors and other unknown telemarketers on their behalf, states:

111.  Plaintiff reasserts and incorporates fully herein by reference each of the above paragraphs as though fully set forth herein.

112.  For 25 years now the FCC has made clear that "the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the TeL Consumer Prot. Act of 1991,* 10 F.C.C. Rcd. 12391, 12397 ¶ 13 (1995).

113.  In 2013 the FCC explained again in detail that a defendant "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC,* 28 F.C.C. Rcd. 6574 (2013). Both actual and apparent authority, and ratification, can be a basis for a finding of vicarious liability. *Mohon v. Agentra,* 400 F.Supp.3d 1189, 1226 (D. NM 2019).

114.  The FCC has instructed that defendants may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were ***judgment proof, unidentifiable, or located outside the United States, as is often the case.*** Even where third-party telemarketers are identifiable, solvent, and amenable to

judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of `independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

May 2013 FCC Ruling, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

115.    The FCC has rejected a narrow view of TCPA liability, including the assertion that liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Mohon v. Agentra,* 400 F.Supp.3d 1189, 1226 (D. NM 2019).

116.    A direct connection exists between all Defendants herein and the calls complained of by Plaintiff because the calls were directly made on behalf of Defendant's Rocket, Farner, Walters, Gilbert, Nunes, Core, Ramos, Siciliano, so they could all profit from a common enterprise in which they all substantially participated.

117.    "As the FTC has explained in its Compliance Guide, `taking deliberate steps to ensure one's own ignorance of a seller or telemarketer's Rule violations is an ineffective strategy to avoid liability.'" *FTC v. Chapman,* 714 F.3d 1211, 1216-1219 (l0th Cir. 2013).

118.    Defendant's Rocket, Farner, Walters, Gilbert, Nunes, Core, Ramos, Siciliano, and their independent contracting agents are directly liable and responsible for the phone calls at issue because Defendant's Rocket, Farner, Walters, Gilbert, Nunes, Core, Ramos  and Siciliano actually made or initiated the calls to Plaintiffs or they substantially participated.

119.    Defendant's Rocket, Farner, Walters, Gilbert, Nunes, Core, Ramos, Siciliano, are vicariously liable for the calls complained of by Plaintiff herein because they:

a)      authorized or caused Defendant Nunes and the Core Defendants to initiate the phone calls or initiated the calls and texts themselves;

b)      directly or indirectly controlled the persons who actually made or initiated the calls;

c)      allowed the telemarketers and independent agent access to information and operating systems within Defendants' control for the purpose of selling goods and services, without which they would not be able to sell their insurance using robocalling and direct dialing;

d)      allowed the telemarketers and independent contracting agents to enter or provide consumer information into Defendants' sales or operational systems;

e)      approved, wrote, reviewed or participated in developing the telemarketing sales scripts;

f)      Defendants reasonably should have known or consciously avoided knowing that the actual telemarketers were violating the law and Defendants failed to take effective steps within their power to require compliance; OR

g)      Defendants gave substantial assistance or support to Core and Nunes and each other while knowing, consciously avoiding knowing, or being recklessly indifferent to the fact that John and Jane Does were engaged in acts or practices that violated the TCPA, and/or the MMPA.

120.    Defendant's Rocket, Farner, Walters, Gilbert, Nunes, Core, Ramos, Siciliano apparently had authority to engage in the autodialing, texting and robocalling at issue herein because after Plaintiff patiently listened to the scripted sales pitch the Defendants all profited from each and every sale.

121.    Defendant's Rocket, Farner, Walters, Gilbert, Nunes, Core, Ramos, Siciliano ratified the robocalls and direct dialing DNC violations to Plaintiff described above because they

accepted and intended the benefits to them of the calls while knowing or consciously avoiding

knowing their telemarketer-agents were robocalling and automated texting cell phones and

phone numbers listed on the Federal and Missouri State Registry without complying with the

Registry and without prior express written consent of the robocalled, called, and texted

consumers.

WHEREFORE, Plaintiff prays for entry of judgment against Defendant's Rocket, Farner,

Walters, Gilbert, Nunes, Core, Ramos, Siciliano, and their independent contracting agents for his

statutory, actual and/or treble damages sufficient in size to set an example and deter in the future

the conduct complained of by Defendants or others. Plaintiff prays for such other and further

relief as the court finds proper. Plaintiff requests an award of his attorney fees and costs.

Respectfully submitted,


/s/Edwin V. Butler, Esquire
Edwin V. Butler Mo. 32489
Attorney At Law
Butler Law Group, LLC
1650 Des Peres Rd., Suite 220
St. Louis, MO 63131
edbutler@butlerlawstl.com
(314) 504-0001

Attorney for the Plaintiff


Certificate of Service

I hereby certify that the above and foregoing Answer was served electronically this 2nd
day of February 2023, on Attorney for the Defendants, Kyle Tayman, Goodwin Procter LLP
and via ECF/CM filing and email at KTayman@goodwinlaw.com. This document was also
scanned for viruses using Windows Defender 2022 and is free of viruses and malware.

/s/Edwin V. Butler
Edwin V. Butler